CHANCERY.

## Bowlin and wife vs. Pollock.

Case 5.

Error to the Fayette Circuit; JESSE BLEDSOE, Judge.

*Devises. Wills. Patents. Statutes. Co-tenants. Land warrants. Entries. Surveys. Estoppel. Mistakes. Warranty.*

April 16.

Judge MILLS delivered the Opinion of the Court.

POLLOCK, the appellee, resided on a tract of four hundred acres of land, in his own name, or as heir of his brother.

A large claim covered entirely his tract and farm, of which entry was in the following words and figures :

"*March 2d,* 1784.

Entry of Patty Harris and others.

Patty Harris and *Thomas Spilman* assignee, William Tapp and Elias Barbee assignee, John Sudduth assignee, Steven Jett, John Porter, Benjamin Withers, Isaac Arnold, Spencer Graham, Jesse Smith, Thomas Massie, Jacob Nay and Charles Morgan assignees, enter 17372 acres of land on treasury warrants, Nos. 19,322, 18,877, 19,169, 18,880, 11,047, 19,186, 17,466, 18,874, 12,006 and 15,536,

each to hold in proportion to their respective quantities in said warrants, beginning at the South West corner of Isaac Halbert's, Richard Ratcliff's, Henry and Robert Gunnell's, William Gunnell's and Chs. Morgan's entry of 12,311 acres, on Hinkson's fork, and running with their line North 1730 poles, thence West 1606, 65 poles, thence South 1730 poles, thence East 1606, 65 to the beginning."

<div style="margin-left:auto;text-align:right">BOWLIN AND WIFE vs. POLLOCK.</div>

The plat and certificate of survey, stands precisely in the same names with the entry, and was made 21st of April, 1785.

<div style="text-align:right">Survey in the words of the entry.</div>

On the 14th May, 1795, a grant issued from the Commonwealth of Kentucky, on the aforesaid entry and survey, granting the lands positively, without saying in what proportions they should hold it, and the grant is to the following persons: "Unto Patty Harris and Thomas Spilman assignee of William Tapp and Elias Barbee assignee of John Sudduth assignee of Stephen Jett, John Porter, Benjamin P. Withers, Isaac Arnold, Spencer Graham, Jesse Smith, Thomas Massie, John Coons assignees of Jacob Nay and Charles Morgan assignees &c."

<div style="text-align:right">Patent.</div>

A suit in equity was brought on this entry in the name of H. Marshall, Esq. and others, against Pollock, to recover his land, he having the oldest patent.

Pending that controversy, and before it was finally closed, Pollock entered into a contract with Bowlin and wife, the appellants, to purchase of them part of the interest secured and granted by the aforesaid title papers to Thomas Spilman; she, the said Mrs. Bowlin, being the daughter of said Thomas Spilman, and supposed to be entitled, under the will of said Thomas, to his interest, devised by his will, to a part of his children, some of whom were dead, and she was their heir. The contract was evidenced by an article of agreement, dated 3d September, 1816, in which it is recited that, "whereas the said William Bowlin, in right of his wife, Sally Bowlin, late Sally Spilman, daughter of Thomas Spilman, one of the persons named in the entry of 17372 acres of land, made in Kentucky, on the 2d of March, 1784, in the name of Patty Harris &c. on

<div style="text-align:right">Contract between Pollock on the one part and Bowlin and wife on the other.</div>

Hinkson's Fork, to one moiety of said Spilman's interest in said entry, which interest of said Bowlin and wife, is the one half of twenty-four hundred and forty-five acres in said entry, which has been surveyed and patented;" Pollock agreed to give two thousand dollars, the one half in one, and the other in two years from the date of the article; Bowlin and wife agreed to convey the land to Pollock as soon as *may be*, with a clause of special warranty against Thomas Spilman's heirs, and all persons claiming under him—Pollock to give his notes for the purchase money, and to mortgage the land to Bowlin, to secure its payment.

On the 9th October, 1816, Bowlin and wife conveyed to Pollock, and Pollock gave his notes for the purchase money. The deed recites that "whereas, the said William Bowlin, in right of his said wife, Sally Bowlin, late Sally Spilman, daughter of Thomas Spilman, one of the persons named in an entry of 17372 acres of land, made in Kentucky on the second of March, 1784, in the name of Patty Harris & Co. on Hinkson's Fork, to one moiety of said Spilman's interest in said enty, which interest of said Bowlin and wife, is the one half of twenty-four hundred and forty-five acres in said entry, which has been surveyed and patented."

The conveyance then proceeds to convey "the *said* interest of the said Sally Bowlin and of said William Bowlin, in and to said land above described, being the one moiety or half of the interest of said Spilman, to wit, in the one half of twenty-four hundred and forty-five acres aforesaid in said entry, survey and patent." The deed also has a clause warranting the land so conveyed, against Bowlin and wife, and the claim of Thomas Spilman, and his heirs, and all persons claiming under him, but no others.

Pollock's bill
for an injunc-
tion against
a judgment
for the pur-
chase money,

Pollock failed to pay his notes for the purchase money, when they became due; Bowlin obtained judgments at law, which Pollock enjoined by his bill in equity, praying a perpetual injunction and rescission of the contract. He amended his bill twice, but we need not take notice of the equity of

his original bill or of one amendment, for it is done away by the answers or evidence in the cause, or on its own merits, was untenable.

But in one amendment he has set up an equity which merits more particular consideration. It is this, the will of Thomas Spilman, the father of Mrs. Bowlin, was dated on the 1st of October, 1782, and was recorded, after his death, on the 7th of November, 1782, in King George county, Virginia, where he resided, in which the only clause which has a bearing on this controversy, is as follows:

"My desire is, whereas I have a land warrant for two thousand four hundred and forty-five acres of land, any where in Virginia, that it shall be equally divided between my four sons, viz: James Spilman, Thomas Spilman, John Spilman and Samuel Spilman. My saying any where in Virginia, is a mistake of mine: I mean the vacant land." At the time of the contract and before a copy of this will was present, it was supposed and represented by all concerned, that the warrant mentioned in the will was the one on which Thomas Spilman's share in the entry was founded. Samuel Spilman and John Spilman, two of the devisees of the warrant, were only half brothers to the two other devisees, James and Thomas, and Mrs. Bowlin was their full sister, and the only remaining brother or sister of the whole blood; and the two first of these devisees had departed this life childless and intestate, and it was asserted by Bowlin and wife, that she inherited the shares of said deceased devisees, which was agreed to by Pollock, and under this impression and belief the contract was made.

But Pollock now charges in his bill that Charles Morgan had assigned the warrant alluded to in the will of Spilman, after his, said Spilman's death, to himself, or some other person had done so for him, and in his own name had appropriated the warrant by entry, survey and patent, and that the warrant devised by the will, is not included in the entry in the name of Patty Harris &c.; that Thomas Spilman had no interest in that entry, or if he had, it was not devised by his

*Margin notes:*

BOWLIN AND WIFE.
vs.
POLLOCK.

and rescission of the contract.

Will of Spilman under which Pollock and his wife claimed.

Allegations of Pollock's amended bill, contending Bowlin and wife had nothing in the land they had sold him.

BOWLIN AND
WIFE
VS.
POLLOCK.

will, but on his death descended to the oldest son, as heir at law, at the time of his death, who was William Spilman, and of course Mrs. Bowlin could not be, and was not entitled to one single foot of land, as heir to her brothers, who were the devisees of her father, and the whole claim of Patty Harris and others, an interest in which Bowlin and wife attempted to sell him, originated after the death of said Thomas Spilman, their father; and, therefore, the whole claim as to him was void, and there was no interest therein, either devisable or descendable to his offspring, and consequently that the whole contract was based either on an entire mistake of the parties, or the fraud of Bowlin and wife, and ought, therefore, to be rescinded in toto.

Answer of
Bowlin and
wife.

Bowlin and wife, in answers to these charges, deny any knowledge of Morgan's appropriation of the warrant named in the will of their father, and denies his authority to do so. They insist that the warrant devised by the will is included in the entry of Patty Harris & Co. and require proof to the contrary, and they refer to the will and title papers on this point. They still insist that Mrs. Bowlin holds the interest of her deceased brothers in the entry, by virtue of the devise of the warrant contained in the will of her father.

Decree of the
circuit court
rescinding
the contract.

The court below set aside the contract and granted a perpetual injunction, and from that decree Bowlin and wife have appealed.

Spilman, the
testator,
owned no
warrant on
which the
claim was
founded, at
his death, but
they were all
issued and
the entry
made after
his death;
hence his
Will passed
nothing in the

It does appear from the Register's book of warrants, that the number of all the warrants in the entry of Patty Harris & Co. as above given are true. Not one of them is in the name of Thomas Spilman, and no assignment of any one is made to him, and every one issued after his death, except one small one of 362 acres, in the name of Thomas Porter, and assigned by him to John Porter, named in the entry, and issued 21st February, 1782; and another of 305 acres, issued the 15th of May, 1782, No. 12006, to Jesse Smith, named in the entry. So that Thomas Spilman, after all the warrants are ascertained, had no warrant, and the entry was made long after his death, in which he, with others, was to hold in pro-

portion to his warrant, when he had none, and was
not in existence himself. The entry seems to say
he is an assignee. The patent declares him as-
signee of William Tapp. From this statement it is
placed beyond doubt that Thomas Spilman's will,
made in 1782, could not and did not operate on this
entry, made in 1784, on warrants issued after his
death, even if his name had been in them. At that
date his will could not pass lands acquired after its
date and before his death, unless it was re-publish-
ed. Much less could it operate upon posthumous
titles. Here one might rest this fact without further
enquiry. For it is clear that Mrs. Bowlin could not
have the least scintilla of title.

But as it may be said that it would go to the
heirs of Spilman, against whom Pollock has a war-
ranty; on that Pollock ought to rely, instead of ob-
jecting to the contract. We will, therefore, pursue
this enquiry further, and we will see that neither
she nor the heir at law, could take any title. If the
title was descendable it could be devised, and if it
could be devised it would descend. The only plau-
sible ground, therefore, on which it could be con-
tended that the heirs could have any title, arises
from the act of Assembly of the 22d December,
1792, 1 Litt. L. K. 160, which reads thus—

"And, whereas, in some instances grants have is-
sued in the names of persons who were deceased,
prior to the date of the grant, and cases of the same
nature may happen in future: Be it enacted, that in
all such cases the land conveyed shall descend to
the heir, heirs or devisees in the same manner as it
would do had the grant issued in the lifetime of
such decedant." If, for the sake of argument, it be
conceded that this act vested in the heir the title,
from the date of the entry, as far as it was compe-
tent for the Legislature to do so, although the de-
cedant in his life, had no color of even an incipient
claim (which is very problematical) the question
will recur still, what interest did it vest?

To measure that interest we must look back at
the entry and survey. These tell us the parties
must hold in proportion to their respective war-

**Margin notes:**

BOWLIN AND
WIFE
vs.
POLLOCK.

land and his
devisees took
nothing un-
der the grant.

Query,
whether the
act of '92
vests the heirs
or devisees,
of persons
dead before
the date of
the grants to
them, with
any title
where the de-
cedant had
not some in-
cipient claim
to the land
before his
death.

Grant to H.
S. assignee of
T., B assign-
ee, &c. &c. is?

BOWLIN AND WIFE.
vs.
POLLOCK.
——————
sued on a survey and entry, each to hold in proportion to their respective quantities in the warrants, if it be shewn S. had nothing in the warrant, nothing passed to him by the grant.

It seems the estoppal to patentees in such case, to deny that one of them had some interest, can have no effect in a controversy between him and his vendee about the title.

Sale of the devisee of such patentee made under the mistake of both him and his vendee, as to his right shall be set aside on the discovery of the mistake, even after conveyance made.

Rescission of contracts for mistakes.

rants. To ascertain that, we seek the quantity of Thomas Spilman's warrant; and then we discover that he had no warrant at all. Whether the act ever could have intended to grant lands to an heir, where the ancestor had not the least shadow of claim to measure the grant. by, is very doubtful. But without deciding it, we have no way to ascertain the extent of interest here.

It may be said that the joint holders of this entry would be estopped to question the right of Thos. Spilman's heirs. Be it so, the question still recurs, to what extent of interest are they estopped, is that interest is to be measured by his warrant, when he has none? But if an estoppal would lie, as between these patentees, would it lie as between them and strangers? The conclusion cannot be admitted.

It is evident, both from the proofs as well as the allegations of the parties that the appellants really believed that the warrant of Thomas Spilman was in this entry, and that his interest was to be measured thereby. The writings themselves shew that Bowlin and wife believed they were selling, and Pollock supposed he was buying, under the will, the warrant mentioned therein: an interest co-extensive with the inheritance of Mrs. Bowlin, from her deceased brothers of the whole blood. This turns out to be entirely untrue, the thing supposed to be bought and sold was not there, or any part of it. This was a clear mistake and no fraud is imputable to the parties. What then ought to be the effect of that mistake? The principle that the chancellor will vacate contracts on the ground of mistake, is too familir to need either proof or illustration. The mistake here is not partial, nor does it affect a quantity of interest, but is so great that there is not a particle passed of that which was supposed to be sold.

It is doubted whether a case can be found in which the mistake was so palpable and of such extent, where the chancellor has refused to relieve. If there be, it was owing to the bad conduct of the applicant or to some other circumstance which forbade complete redress. Here there is no lacks, on

the part of Pollock, in seeking redress, so soon as he discovered his error. He has set up his equity by an amended bill so soon as it was discovered. He was ignorant of it when he filed the original, and his opponents seem to have been ignorant of it till the evidence disclosed it. He seems to have filed his original bill in search of equity and set up a colorable resistance to the contract which was unfounded; but this ought not to prejudice his better equity of a different character which he has asserted as soon as discovered, and there is no obstacle in the way of a complete rescission. The parties can be placed in *statu quo*, completely. Pollock has gotten nothing by his conveyance. By recovering the money his adversary may gain, and he may lose much. By preventing that recovery neither party will gain or lose any thing except the costs of the controversy.

The only plausible ground on which it can be contended that Pollock ought not to be relieved, is, that he has the warranty of Bowlin against the heir or heirs of Spilman. That the controversy which might arise between the heir and devisee is one that was contemplated at the time, and provided against by the parties in the stipulations of the warranty, and that he ought to be compelled to rely upon it till he suffers an eviction. We have seen that he is in no great danger from the heir. But if in this we are mistaken and his warranty was general against the world, as the contract is not completed, the mistake so total and palpable, the principle is not perceived on which he should not be relieved. His motives in the purchase, no doubt, were to lay off the part of Thomas Spilman, around and covering his possession, including some adjoining land —to merge and unite that claim with his own, and thus place himself out of danger, not only of the entry of Patty Harris & Co. but to arm himself against other claimants, against whom he has no warranty, and against whom he has no weapon of defence. Allured by the representations of his adversaries, he firmly believed that he was acquiring an interest in the entry of Patty Harris and Co. to some extent, and was induced to take it without

Bowlin and Wife. vs. Pollock.

It is no objection to the rescission of a contract on the ground of the mistake of the vendor in supposing he had some title when he had none, that a conveyance with warranty against certain persons who were also without right, had been executed.

warranty, except as to those who claim under Spilman. As to others he was to run the risque. Let him be evicted when he may by others he loses all and has no recourse. He cannot probably be evicted by the heir of Spilman to give him the only recourse against his vendors. He cannot fortify his own claim, for he has added nothing to it.

In short he has gotten nothing by the contract of the least benefit, except a simple warranty against the heirs of Spilman. He has to risque every body else, and was induced to do so by the mistaken and unintentional misrepresentation of facts by his vendor, and gains no defence for his home by his purchase. He has not completed it on his part and the opposite party can lose nothing if he never fulfils it.

If he had gotten a defective title by the contract, we admit that cases are not wanting to shew that he ought to rely on his warranty. But as he has not gotten even a colour or shadow of claim, he ought not to be compelled to rely on his warranty, in lieu of every thing besides.

The decree, the Chief Justice dissenting, must be affirmed with costs.

*Purchaser in such case having got nothing and not having paid the purchase money, may resist the payment, and have a rescission.*

*If the purchaser get any thing by a fair contract after the conveyance with warranty, he must look to that and not come into equity.*

## Dissent of Chief Justice Bibb.

This controversy grows out of a sale by Bowlin and wife, of an interest claimed by them in Thomas Spilman's part of the land in the following entry, survey and grant.

"*March, 2d,* 1784.

*Entry of Patty Harris & Co.*

Patty Harris and Thomas Spilman, assignee, William Tapp and Elias Barbee, assignee, John Sudduth, assignee, Stephen Jett, John Porter, Benjamin Withers, Isaac Arnold, Spencer Graham, Jesse Smith, Thomas Massie, Jacob Nay and Charles Morgan, assignees, enter 17372 acres of land, on treasury warrants, Nos. 19,322, 18,878, 19,169, 18,880, 11,047, 19,186, 17,466, 18,874, 12,006, and 15,536; each to hold in proportion to their respective quantities mentioned in said warrants, beginning at," &c.

Upon this entry a survey was executed on the 21st April, 1785, in the names of the persons described in the entry, and on the 14th May, 1795, a grant issued in consideration of the ten treasury warrants, by their numbers corresponding with the entry "unto Patty Harris and Thomas Spilman, assignee of William Tapp and Elias Barbee, assignee of John Sudduth, assignee of Stephen Jett, John Porter, Benjamin P. Withers, Isaac Arnold, Spencer Graham, Jesse Smith, Thomas Massie, John Coons, assignees of Jacob Nay and Charles Morgan, assignee, &c. a certain tract or parcel of land, containing 17,372 acres, by survey, bearing date the 21st day of April, 1785," after giving the description of the land, according to the certificate of survey, the grant of the Commonwealth is, "to have and to hold the said tract or parcel of land, with its appurtenances, to the said *Patty Harris and Company*, and their heirs forever: in witness whereof," &c.

Upon this claim of Patty Harris & Co. a suit in chancery was instituted against Pollock and others, and a suit had been instituted likewise by Halbert and others, on the entry upon which Harris & Co. depended, against Fowler, and both of these suits coming up upon appeals, were heard together and decided on the 25th May, 1814, (as reported in 3rd Bibb, 384.) By this decision the entry of Patty Harris & Co. was sustained as a special location, the survey was declared to be conformable to entry, and the settlement and pre-emption of Pollock were declared vague, and, therefore, to yield to the claim of Patty Harris & Co. the complainants in that cause.

On the third of October, 1816, by an article of agreement between Pollock and Bowlin, it was recited, "that, whereas the said William Bowlin, in right of his wife, Sally, late Sally Spilman, daughter of Thomas Spilman, one of the persons named in an entry of 17372 acres of land, made in Kentucky on the second of March, 1784, in the name of Patty Harris & Co. on Hinkson's Fork"—claimed a moiety of said Spilman's interest in the said

*Margin notes:*

BOWLIN AND WIFE *vs.* POLLOCK.

Grant to Harris, Spilman, &c.

Suits between Harris, Spilman, &c. and Bowlin and others.

Articles of agreement between Bowlin &c. and Spilman.

<div style="margin-left">Bowlin and<br>wife<br>vs.<br>Pollock.</div>

entry, survey and grant; said Spilman's interest being twenty-four hundred and forty five acres, the half of which said Bowlin and wife claimed; therefore, in consideration of two thousand dollars, to be paid at the times and in equal payments as set forth in the agreement; by Pollock, Bowlin agreed to convey to Pollock his wife's interest, "with special warranty against the claim of said Thomas Spilman and his heirs, and all persons claiming under him"—and it was further agreed, that Pollock should give his two notes for one thousand dollars each, payable at the stipulated periods; that Bowlin and wife should convey their interest to Pollock, and that Pollock should execute at the same time a mortgage to secure the payment of the consideration.

<div style="margin-left">Conveyance from Bowlin and wife to Pollock.</div>

On the 7th of October, 1816, Bowlin and wife executed a deed to Pollock, reciting their claim as in the agreement of the third of October, and conveyed their interest as one moiety of twenty-four hundred and forty-five acres in said entry, survey and patent, with warranty against themselves and their heirs, "and against the claim of said Thomas Spilman and his heirs, and all persons claiming under him, but against no other person or claims whatever."

In May, 1818, Pollock exhibited his bill in equity against Bowlin and wife, for injunction against the judgment at law, obtained upon one of the notes given, and for a rescission of the contract.

<div style="margin-left">Original bill of Pollock, for rescission of the contract.</div>

In this bill Pollock states his claim and occupation under Pollock's settlement and pre-emption for about 25 or 26 years, and that he is yet possessed; that a suit was instituted against him and others by Patty Harris & Co. as complainants, of whom were Bowlin and wife, claiming as heirs of Thomas Spilman, upon the entry of Patty Harris & Co. and refers to the suit in the General court, as pending and undetermined—"that having understood from the record and proceedings in said suit, that said Bowlin and wife was the only heir at law of the said Thomas Spilman, as the record did then present the case, your orator and the said Bowlin and wife

came to an agreement for the one half of said Thos. Spilman's interest, being twelve hundred and twenty-two and an half acres," and refers to the agreement of the 3rd of October, and the deed of the 7th of October, 1816.

The complaint in this bill is, that he discovered since the making of the agreement, that Bowlin and wife "are not the heirs at law of the said Thomas Spilman, and in fact their names have been stricken out, as part of the complainants in said suit in chancery, and others inserted in their place;" that the title to said Thomas Spilman's interest is now properly in the heirs of William Spilman, the eldest son of the said Thomas," &c. so that Bowlin and wife have no title to the land. He states in this bill that his possession was of 400 acres of land of the first quality, surveyed and patented to Alexander Pollock, which the complainant inherited as heir to his brother.

In August, 1818, Bowlin and wife filed their answer, in which they state that Thomas Spilman, the father of said Sally, now Sally Bowlin, being possessed of a warrant for two thousand five hundred and forty-five acres, devised it to his sons, James Spilman, Thomas Spilman, John Spilman and Samuel Spilman, as appears by his will recorded, which they exhibit; that John Spilman and Samuel Spilman were brothers of the whole blood, to said Sally; they, John, Samuel and Sally, being children of the last wife, and the only children of that marriage, and James and Thomas were the children of said testator by his former marriage; that John and Samuel, the brothers of the whole blood of said Sally, died intestate and without children, leaving said Sally, the only surviving sister and heiress, of the whole blood; that believing themselves thereby entitled, they made the contract with Pollock; that he had been party to their suit; had, moreover, full knowledge of all the facts; that the will of said Thomas, the testator, was shewn to him, and the facts on which they founded their claim were fully made known, and were the subjects of frequent conversation by him, before he entered into

<div style="text-align: right">

BOWLIN AND
WIFE
vs.
POLLOCK.

Answer of
Bowlin and
wife to Pol-
lock's origin-
al bill.

</div>

the agreement and accepted the deed; they deny that the said Pollock had made the discovery pretended in his bill since the contract, but aver the facts were fully known and explained to him before the contract, and that he with a full knowledge of all the difficulties in their claim, entered into the agreement and accepted the warranty, and the deed therein mentioned; they aver that they had repeatedly before this suit offered to rescind the contract, but the complainant, Pollock, utterly refused, declaring that the contract was worth to him ten thousand dollars; they deny any knowledge of their names having been stricken out of the bill, and if done, it was wholly unauthorized by them.

Thomas
Spilman's
will.

The will of Thomas Spilman bears date on the first of October, 1782. The devise alluded to is in these words: " Item, my desire is, whereas, I have a land warrant for two thousand four hundred and forty-five acres of land, any where in Virginia, that it shall be equally divided between my four sons, viz: James Spilman, Thomas Spilman, John Spilman and Samuel Spilman—my saying any where in Virginia is a mistake of mine, I mean any vacant land." This will was duly admitted to record in Nov. 1782.

Proofs.

It appears by the depositions in the cause, that Pollock was fully apprised of the manner in which Bowlin and wife claimed; that they did truly represent the facts upon which she based her claim as heiress to her deceased brothers of the full blood, their death and intestacy, without issue, and furnished Pollock with a copy of the will of Thomas Spilman, deceased, and after inspecting it, he purchased upon his own judgment upon the facts, truly and fairly stated, as set forth in the answer of Bowlin and wife. It does moreover appear in proof that he declared that by the purchase of Bowlin and wife, he was fully able to cope with those who were suing him upon the claim of Patty Harris & Co.; that he refused the proposal of Bowlin to rescind the contract, upon some dissatisfaction expressed by Pollock, and said the contract was worth eight or

ten thousand dollars to him, but nothing to Bowlin and wife.

After the answer of Bowlin and wife was filed, and depositions taken fully supporting that answer, Pollock obtained leave in August, 1819, to file an amended bill.

In this amendment he exhibits the will of Thomas Spilman, bearing date in 1782, and recorded in Virginia in the same year, and alleges that he has discovered the fact of the will and devise and death of Thomas Spilman in 1782, and it may be true that said Sally has inherited the part of the land warrant, devised in said will as set forth in the answer; but that he has "discovered that a certain Charles Morgan assigned the said warrant so devised, in the will of Spilman, to himself, after the death of Thomas Spilman, or some other person has done so for him, and has appropriated said warrant by entry, survey and patent as by a copy of the warrant, entry, survey and patent hereto annexed will appear; that the warrant so devised by said will is not included in the warrant of Patty Harris &c. as will appear by their numbers on the face of the entry and warrants hereto annexed; that if said Thomas Spilman had an interest in the entry sold to your orator, it was not devised by his will and under the law of descents then in force, his interest descended to his eldest son, at that time his heir at law, to-wit, William Spilman, as your orator has been informed and believes, and that the defendant, Sarah Bowlin, could not be entitled to one single foot of said warrant;" that as Thomas Spilman died before the date of the entry of Patty Harris &c. the entry as to him is void, and could vest no interest devisable or descendable by law, and, therefore, he insists that the defendant, Sarah, could have no interest of any kind in the claim of Patty Harris & Co.

The defendants in answer to his amended bill, deny any knowledge of the facts asserted, other or different from those asserted in their former answer.

*Marginal notes:* BOWLIN AND WIFE vs. POLLOCK.

Amended bill

Answer to amended bill.

BOWLIN AND
WIFE
vs.
POLLOCK.

The circuit court decreed that the contract be re-scinded, and perpetuated the injunction against the judgment at law.

*Decree of the circuit court.*

The bill complains that Thomas Spilman, one of Patty Harris & Co. was dead before the date of the entry and grant in his name. This is true. But the statute of 1792, (1 Litt. laws, p. 160, 2 Dig. 1053,) provides for such cases thus:

*Act of '92 vested the title in those who were heirs or devisees at the date of the enactment, and not at the time of the demise.*

" Whereas, in some instances grants have issued in the names of persons who were deceased prior to the date, and cases of the same nature may happen in future: Be it enacted, that in all such cases, the land conveyed shall descend to the heir, heirs or devisees, in the same manner as it would do, had the grant issued in the lifetime of said decedant."

When the grant issued in 1795, to Patty Harris, Thomas Spilman and others, it was not a void grant to Spilman, but his heirs or his devisees took the estate in the same manner as if the grant had issued to Spilman in his lifetime. The cases of Hansford vs. Minor's heirs, 4 Bibb, 385, and Lewis vs McGee, 1 Marsh. 199–201, have settled the doctrine, that in such cases, of grants in the name of deceased persons, the statute does not give the land to the heirs or devisees, as known by the laws of devises and descents, existing at the date of the grant, but to the heirs or devisees, according to the law of descent and devise existing at the death of the deceased.

*Death of the grantee before the entry does not affect the operation of the grant under the act of '92 for the benefit of the heirs and devisees.*

The fact of the death of Thomas Spilman before the entry, may, it is true, diminish the power of the claim of Patty Harris & Co. to overreach and command conflicting claims, or produce difficulties in such conflicts.

*Claim to relief set up in the original bill, denounced.*

But that diminished authority cannot be any just cause of complaint against the contract between Pollock and Bowlin; because Pollock before he made the contract, was fully apprized of the death of Thomas Spilman, in 1782, before the date of the entry; the fact was fully disclosed to his view, by the inspection of the copy of the will, and by his knowledge of the entry, survey and patent of Patty

Harris & Co. acquired as a suitor contending a-gainst it; he purchased with a full knowledge of those facts; his first bill is an unfair, disingenuous pretence of an after discovery of that which was known to him before and at the time of the contract. He purchased with a full knowledge and statement of the facts, and, therefore, on this ground there is no cause for rescinding the agreement.

<div style="text-align:right">BOWLIN AND<br>WIFE<br>vs.<br>POLLOCK.</div>

By the amended bill he takes the ground, that it may be true that Sarah Bowlin did inherit from her two brothers, their parts of the land warrant devised to them, but that the land warrant so devised was not included in the entry of Patty Harris & Co.; that Charles Morgan had assigned the warrant to himself and acquired land thereby elsewhere; that Sarah Bowlin took nothing in the entry of Patty Harris & Co.; that Thomas Spilman had no interest in that entry descendible or devisable; that the interest, whatever it may be, of Thomas Spilman, under that entry, survey and patent is vested in the eldest son and heir at law, William Spilman.

*Grounds in in the amendment.*

A land warrant was a devisable and descendible interest, according to the case of Gist's heirs vs. Robinett &c., 3 Bibb, 5. The land after acquired by the warrant would pass to the devisees or to the heir at law, in case there was no devise. By virtue of the statute of 1792, before recited, the grant to Thomas Spilman, then dead, vested such interest as was designed for him in his devisees, or in his heir at law, according to the laws of devise and descent in 1782, when his will and testament bears date and when he died.

*Land war-waarrnts de-viseable and descendible.*

As the laws stood in 1782, a testator could not devise an after acquired interest in lands, and the eldest son was the heir at law. But a land warrant was devisable, and the bill admits that the testator had a warrant as alluded to in the will. If the interest conceded to Spilman in the entry and patent to Patty Harris & Co. was founded on the warrant alluded to in the will of Spilman, then the statute of 1792 vests and maintains the interest of the devisee of that warrant.

*Devise of land warrants in 1782, passed the land afterwards appropriated by them.*

VOL. VII.                    F

Before the
act of '87 the
sister of the
whole blood
inherited the
entire estate
in exclusion
of the broth-
er of the half
blood.

If that warrant was one of the ten upon which the entry purports to be founded, and in consideration of which the grant issued, then it is clear that the interest of Spilman would pass by virtue of the statute of 1792, to the devisees, the four sons of Thomas Spilman. In that case the interest of Bowlin and wife would be what was supposed in the contract, that is to say, the two sons by the second marriage, John and Samuel, would have taken each one fourth by the devise, and by their subsequent death, without issue and intestate, Mrs. Sarah Bowlin, their surviving sister of the whole blood, would inherit their shares to the exclusion of the sons, William, James and Thomas, the sons of the first wife of Thomas Spilman, they being brothers of the half blood. According to the law of descents, before the first day of January, 1787, the collateral heir of the person last seized, must have been his next collateral kinsman, of the whole blood. So, upon the death of John and Samuel, children of the second marriage, the brothers, William, James and Thomas, sons of Thomas Spilman by his first marriage, could not inherit as heir to the brothers, John and Samuel, of the half blood, but their interest descended to Sarah Spilman, now Bowlin, the sister of the whole blood: for in such cases the maxim is, "*possessio fratris facit sororem esse haæc redem*" —the possession of the brother makes the sister the heir: Black. Com. book II, chap. 14—VI rule of descents, p. 227 and 231.

Question of
the interest of
Spilman in
the warrant.

The title of the sister, Sarah, to the shares of her two deceased brothers of the whole blood, John and Samuel, in the land warrant devised to the four sons, to be equally divided, (thereby being tenants in common,) is not denied. But the object of the amended bill is to prove that at the time of the making of the will, the testator had no devisable interest in the warrants, upon which the entry of Patty Harris & Co. was subsequently made, and upon which the grant issued, nor even any interest which could, or has descended, or been vested, in the heir at law

To maintain these propositions the complainant, by his bill, proposes to trace the ten warrants refered to by their numbers in the entry, survey and grant; to shew therefrom, that all those warrants issued subsequently to the death of Thomas Spilman; that no one issued to him; that no part of any one appears to have been assigned to him, and that the testator's warrant of 2445, was assigned by Charles Morgan to himself, and appropriated elsewhere. These facts asserted by the amended bill; are put in issue by the answer.

Bowlin and wife vs. Pollock.

The only evidence of the facts is the certificate of the Register, made an exhibit in the bill, in which the quantity of each warrant refered to in the entry, survey and grant of Patty Harris & Co. is given, the date of each warrant, to whom issued, and the assignments appearing thereon, and the quantities assigned and the persons appearing as assignees. If the facts stated in the certificate of the Register be taken as true, then the questions of law arising thereon remain to be investigated: But the competency of the certificate of the Register to prove the facts at issue arises. As an exhibit to explain the facts, this certificate is referred to in the bill, as such it has its place; the defendants were to notice the facts asserted by reference to it; they have put the facts in issue: no other proof is offered but that certificate. A copy of a public record or document would be evidence of all that the original itself would prove, if produced. But a certificate or extract of facts from parts of public records or documents belonging to the Register's office are not evidence. If such a certificate had been offered in evidence and not objected to, this court ought not to receive the objection, for the first time made here. They ought in such case to presume that the parties had accepted such certificate or extract, in lieu of the more expensive mode of bringing certified copies of the whole documents.

*Held the certificate of the Register (not a certified copy of a record in his office) of the dates, amounts and assignments of the warrants on which the grant issued, is not competent evidence.*

But here the certificate is referred to in the bill, to the reading of it as part of the bill, no objection could be made, any more than to the reading of the body of the bill. But when read, it has not the

*An exhibit made in the bill to prove a fact denied in the answer,*

BOWLIN AND
WIFE
vs.
POLLOCK.
——————
may be read
as part of
pleading and
as such can-
not be exclu-
ded, but if
not compe-
tent, will not
be taken for
proof, but for
allegation
only.

Land war-
rants were as-
signable by
parol prior
to 1787.

force of evidence to prove the truth of the bill.
If the exhibit refered to, has all the solemnities ne-
cessary to authorize it to be read as evidence, as a
certified copy of an entry, survey, patent, or war-
rant, or deed enrolled, then the reading of the ex-
hibit proves the truth of it. But the reading of a
certificate, such as the one in question, is no more
evidence of the truth of the facts, than a copy of
an account sworn to by the complainant, and refer-
ed to in his bill, would be evidence of the justice of
the account when put in issue.

But the entry is in the name of Spilman, as an
assignee; a warrant was assignable by parol before
1787; the surveyor has received the entry so, he has
received the survey so, and the Register has issued
the grant to Spilman, as being assignee; all the com-
pany have recognized Spilman as an assignee of the
warrants or some part thereof, and as part owner
of the entry, survey and grant. To receive a mem-
orandum from the office, which will stop at any
point or part, desired by the party asking it, to
overturn the solemn acts of the Surveyor, Register
and parties concerned in interest, would be going
too far.

Spilman's in-
terest ap-
pears on the
face of the
entry, sur-
vey and pa-
tent, but not
the amount
of it.

To obviate the internal evidence contained in the
entry, survey and grant, that Spilman is assignee
and entitled to a part of the land, the counsel for
complainant lay stress on the expressions in the en-
try, "each to hold in proportion to their respective
quantites mentioned in said warrants," and agree
that as no warrant has issued to Spilman and no as-
signment appears on the warrants to him, that there-
fore he is entitled to none by the very terms of the
entry. Supposing the certificate of the Register to
be evidence, then the quantities expressed in the ten
warrants amount to nineteen thousand six hundred
and forty-one acres and an half, exceeding the quan-
tity located by two thousand two hundred sixty-nine
and three quarter acres. Of this quantity of 19641
1-2 acres, but eight of the fifteen persons named in
the entry are original holders: Spilman, Barbee,
Sudduth, John Porter, Nay and Morgan, are not
named in the body of the warrants, and Coons, a

patenttee, is not named in the entry or survey. Neither the *habendum* in the entry nor in the patent refer to persons named in the body of the warrants, as originally issued, nor to the quantities expressed in the warrants. Not to the persons alone named, because some of them are expressly named as assignees, and Spilman especially; not to the quantities expressed in the face of the warrants, because each warrant must abate so much as is necessary to reduce the quantities in the warrants to the quantity located; otherwise some one or more of the persons named in the entry would get none of the land located. This shews that these expressions in the entry, "each to hold in proportion to their respective quantities mentioned in said warrants," means that they are not joint tenants, but that their interests are unequal and subject to be settled among themselves.

The entry, survey and grant, all express an interest in Thomas Spilman; the company are estopped to deny it; that interest, like the interest of each and every other, cannot be determined by the grant but must be determined by evidence behind the grant, survey and entry. If no more than the exact quantity of seventeen thousand three hundred and seventy-two acres shall be obtained, all must suffer a proportional abatement; in case of a defect all must sustain a farther proportional diminution, in case of surplus all must share it proportionally; *according to their true interests in the entry, survey and grant.*

The respective interests of the grantees are matters of fact to be settled by the company, they are estopped to say Thomas Spilman had no interest, and that interest may be traced by matters without the entry, survey and grant. The bill admits that the testator, Spilman, had an interest in a warrant for 2445 acres of land, but alleges that warrant is not the one on which this entry, survey and grant was founded: first, because Charles Morgan, or some one for him, assigned that warrant to himself; secondly, because none of the ten warrants have issued or have been assigned to Spilman, as appears by the warrants. At the time of the devise, and at the

*Margin notes:*

BOWLIN AND WIFE vs. POLLOCK.

Held the other grantees are estopped to deny the interest of Spilman named in the entry, survey, and patent.

Amount of each patentee's interest subject to be fixed by evidence out of the title papers, and for this purpose assignments of warrants by parol made before '87 might be proved.

BOWLIN AND
WIFE.
vs.
POLLOCK.

date of the entry no statute required a contract for land to be in writing, the statute of frauds and perjuries was not then in force in Virginia. Suppose Charles Morgan did assign away the warrant of Thomas Spilman, and did agree, or in consideration of that justice due to Thomas Spilman or his devisees, did of his own accord design, to compensate for the loss of that warrant by the like quantity in this entry, survey and grant? Suppose the devisees of Spilman are willing to accept compensation from Morgan, by a like quantity in the entry? What is to prevent it? Morgan is, by the certificate filed, the assignee of three thousand nine hundred and sixty-eight and an half acres of those warrants, from other members of the company, and can, out of that quantity, compensate Spilman's devisees. The devisees have a right to trace their right in equity, and there is nothing in the face of the entry, survey grant, or in the certificate from the Register's office to estop them from so tracing their interest in the grant to Patty Harris & Co.; but there is much to fortify them in so doing. Whether the entry was made for Spilman upon the identical warrant alluded to in his will, or by Charles Morgan upon another warrant in exchange for that, is not material.

But the bill supposes, that if the warrants mentioned in the entry of Patty Harris & Co. did not issue until after the death of Spilman, neither his devisees nor his heirs can have any interest; that by the certificate of the Register as to dates, persons to whom the warrants issued, and the assignments; that it is proved that Thomas Spilman had neither a descendable or devisable interest. The conclusion cannot be admitted. By the statute of 1792, the interest of Spilman in the grant issued in his name is cast upon the devisees, or upon the heir at law, in the same manner as it would be, had the grant issued in the lifetime of such decedant. Let us suppose then, that Thomas Spilman had been alive in 1795, when the grant issued to Patty Harris, Thos. Spilman & Co. it is clear that if the interest of Thomas Spilman did not pass by devise, it must after his death have passed to the heirs at law, of whom Mrs. Sarah Bowlin would have been one,

*It is no objection to the claim of the heirs or devisees under the act of 1792, that the land warrants issued after the death of the ancestor, as between the heirs or devisees and a co-grantee.*

according to the law of descents in 1795. Or suppose that the grant, by force of the statute of 1792, has reference to the period of Thomas Spilman's death in 1782, so as to vest the estate immediately upon the issuing of the grant in 1795, in the same person or persons who were capable to take in 1782, by devise or descent, according to the laws then existing and applicable to the facts. Then if the devisees cannot trace the connexion between the warrant devised and the subsequent entry, survey and grant, so as to take as devisees, the interest granted by the patent to Thomas Spilman, then dead, must vest in his heir at law. The patent vests an interest either in the devisees or in the heir, which Patty Harris & Co. are estopped to deny: the death of Spilman, the locator, named in the entry, survey and grant, is not extinguished by his death, it is made effectual and valid by force of the statute.

If the estate granted to Thomas Spilman did pass by the devise of the warrant of 2445 acres, and the connexion between that warrant and the subsequent grant, then Mrs. Bowlin takes the precise interest which she claimed and sold, and her husband can never be responsible, as for breach of his warranty against the heir of Thomas Spilman. But if the heir shall claim and Bowlin and wife shall be unable to trace the connexion between the warrant devised, and the grant to Patty Harris, Thomas Spilman & Co. then the event will have happened, and the possibility to which the parties had an eye, and about which they contracted for a warranty; the defendant, Bowlin and wife, agreeing to make the warranty, and the complainant agreeing to accept it and rely upon it. When the complainant so consented, he knew that Spilman died in 1782, a copy of his will proved and admitted to record in that year was presented to him and he inspected it; he knew the facts by which Bowlin and wife claimed as heiress to the two deceased devisees of the unlocated land warrant; he knew by reason of the suit against him, by Patty Harris & Co. the date of the entry, the terms and contents of the entry and of the grant, he was holding a tract of land within the grant, he was party to a decree by Patty Harris,

<div style="margin-left:auto">

Bowlin and wife
vs.
Pollock.

Interest of Bowlin and wife in the land.

Held the purchaser having taken the warranty in the conveyance, must rely on that and not dispute the claim he purchased.

</div>

BOWLIN AND
WIFE
vs.
POLLOCK.

Bowlin and wife &c. by which the validity of the claim of Patty Harris & Co. and the invalidity of his own was decreed; with his eyes open to the possible difficulty which might in future arise between the heir at law and the devisees of Thomas Spilman, deceased, Pollock purchased one moiety of the claim of the devisees from Bowlin and wife, the heiress of that moiety, from two of the deceased devisees, taking a covenant of warranty against the claim of the heir at law. As to every thing else except this covenant of warranty against the possible difficulty with the heir at law, it was a catching bargain on the part of Pollock, to protect his possession.

Contract
made by
Pollock with
full knowl-
edge.

This warranty was given and accepted upon fair open dealing, without fraud or concealment on the part of Bowlin and wife. Upon the facts stated it was brought to a question of devise or descent under the will of Thomas Spilman. A warranty against the heir at law is accepted. There is no pretence by any colour of proof for saying that the heir at law has set up any claim in opposition to the claim of Bowlin and wife. But the complainant has taken upon himself to stir the question and to prove that the title is in the heir at law. At best, allowing his exhibit of the memorandum from the Register its full force, it is matter of doubt between the title of the devisee and the title of the heir at law, and the scale of evidence inclines in favor of the devisee. He has not called Patty Harris & Co. into court to settle the interest of Spilman; nor upon Charles Morgan to say whether this interest of Thomas Spilman was given in exchange for another warrant alluded to in the will. But having put Bowlin and wife out of court, in the suit by Patty Harris & Co. against him, and thereby hedged himself against a new suit, he attempts to rescind the contract, by pleading the title of the heir at law, and so indirectly to open the decree, and to evade the stipulations of the contract with Bowlin.

Where the
contract is for

When parties have fairly stipulated with a view to a particular difficulty, and the vendor has agreed to warrant against it, and the vendee to accept the

warranty; a court of equity ought not to assist the purchaser in taking up the cudgels to perform the office of an adversary claimant, and in acting the part of a traitor to his title and to his warrantor.

It is safer in the present case to leave the purchaser, Pollock, to his recourse upon the warranty, in case the heir at law shall ever successfully impeach the claim of Sally Bowlin under the devises. Whether the land entered, surveyed and patented in the name of Thomas Spilman, deceased, did or did not pass by the devise of the warrant mentioned in the will, depends upon tracing that warrant. It is a question between the heir at law and the representative of the devisees. The pretended discovery can do no more than raise the question between the title of the heir and the title of the devisees. The complainant accepted a covenant against the claim of the heir, if ever made good—the heir has never yet asserted a claim in oposition to that of the devisees.

It seems to me that the contract in the bill mentioned, was free from any suggestion of falsehood or concealment of the truth; that it was a catching bargain by the purchaser, Pollock, with a covenant of warranty, given and accepted, against a difficulty not overlooked; that in such case a court of equity ought not to interfere before any breach of the warranty, unless upon the discovery of some hidden fact which clearly demonstrates that the vendor had nothing to sell, and that the purchaser acquired no benefit: and that the proof in this cause does not present a case in which a court of equity ought not to assist the complainant. The cases of Bumpurs vs. Platner, 1 John. Ch. ca. 213; Abbot vs. Allen, ex'or. of Allen, 2 John. Ch. ca. 519; Miller vs. Long, 3 Marsh 336, are in pont.

It is, therefore, my opinion that the decree of the circuit court be reversed, and that the cause be remanded, with directions to that court to dissolve the injunctions with damages, and dismiss the bill, with costs—but by the opinion of the majority of the court, the decree is to be affirmed.

*Wickliffe*, for plaintiffs; *Talbot*, for defendant.

Margin notes: Bowlin and wife. vs. Pollock. — and the purchaser takes a warranty, he must rely on that and not appeal to equity. — Conclusion.